IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

MAY 1 5 2013

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| LOUIS V. DOSS and CAROLYN DOSS, individually and d/b/a MULLIGAN'S PUB, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>SGT. MARTIN MORRIS; OFFICER HARRY HOLT; and TABC AGENT SCOTT HELPENSTELL, )<br><br>Defendants. ) | CV. NO. SA-11-CV-00116-DAE |

ORDER: (1) VACATING MAGISTRATE JUDGE'S MEMORANDUM AND
RECOMMENDATION; (2) GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT; (3) DENYING DEFENDANTS' MOTION TO
DECLARE THE AFFIDAVIT OF JASON DOSS WAS SUBMITTED IN BAD
FAITH

Before the Court is an Objection to the Magistrate Judge's January 16,

2013 Memorandum and Recommendation brought by Defendants Sergeant Martin

Morris and Officer Harry Holt. (Doc. # 161.) After careful consideration, and for

the reasons given below, this Court **VACATES** the Magistrate Judge's

Memorandum and Recommendation (doc. # 158) and **GRANTS** the Motion for

Summary Judgment brought by Defendants Morris and Holt (doc. # 138).

Additionally, the Court **DENIES** Defendants' Motion to Declare the Affidavit of

Jason Doss in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment was Submitted in Bad Faith.  (Doc. # 163.)

## BACKGROUND

On February 9, 2011, Plaintiffs Louis V. Doss and Carolyn Doss (collectively, "Plaintiffs"), individually and doing business as Mulligan's Pub, instituted this lawsuit against the City of Kerrville, numerous Kerrville police officers, Administrator Alan Steen of the Texas Alcoholic Beverage Commission ("TABC"), and TABC Agent Scott Helpenstell under 42 U.S.C. §§ 1981 and 1983 for violations of the Fourth and Fourteenth Amendments.  (Doc. # 1.)  Prior to the transfer of the case to the undersigned, there was much litigation regarding the sufficiency of Plaintiffs' claims.  Before the Court are the two remaining claims[1] of Plaintiffs' Third Amended Original Complaint (doc. # 76).  First, there is a claim against Defendant Helpenstell under the Fourth Amendment for subjecting Plaintiff Louis Doss to excessive force.  Second, and pertinent to the present

_____

[1] Defendant City of Kerrville filed a Motion to Dismiss on January 30, 2012 (doc. # 81); the Magistrate Judge issued a Memorandum and Recommendation that the motion be granted (doc. # 94), which the Court adopted (doc. # 110). Similarly, on September 7, 2012, Defendant Helpenstell filed a Motion for Partial Summary Judgment with respect to claims he conducted an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments in connection with a November 12, 2010 administrative investigation of Mulligan's Pub.  (Doc. # 131.)  The Magistrate Judge issued a Memorandum and Recommendation that the motion be granted (doc. # 137), which the Court adopted (doc. # 166).

Motion for Summary Judgment, Plaintiffs bring a substantive due process claim

against Sergeant Martin Morris and Officer Harry Holt (collectively,

"Defendants") of the Kerrville Police Department for deprivation of Plaintiffs'

liberty interest under the Fourteenth Amendment in pursuing their chosen

occupation. (Doc. # 76 ¶ 58.)  This claim is based on allegations that Defendants

Morris and Holt implemented a plan to shut down Plaintiffs' business, Mulligan's

Pub, by instituting a campaign to harass customers with the specific intent to

discourage patronage of the business. (Id.)

Plaintiffs own and operate Mulligan's Pub, a bar located in Kerrville,

Texas.  Plaintiffs maintain that, beginning in early 2009, the percentage of minority

patrons of Mulligan's Pub increased after another bar in town closed down. (Id.

¶ 19.) Around that time, Plaintiffs allege that Defendants Morris and Holt "led a

group of white male and female officers . . . in a concerted effort to close the Pub."

(Id. ¶ 23.)  According to Plaintiffs, that plan included a campaign to harass

customers by blocking the parking lot, purposely conducting traffic stops in front

of the business, following customers out of the bar and pulling them over without

probable cause. (See id.) There is testimony by Plaintiff Louis Doss, bartender

Joy Derossier, and Jason Doss (Louis Doss's son) that Defendants Morris and Holt

stated at various times an intent to shut down Mulligan's Pub. (See doc. # 158 at

3

5–6.)

On November 30, 2012, Defendants Morris and Holt filed a Motion for Summary Judgment based upon the defense of qualified immunity. (Doc. # 138.) Plaintiffs filed a Response in opposition to the motion (doc. # 142), and Defendants filed a Reply to Plaintiffs' Response (doc. # 153). On January 16, 2013, the Magistrate Judge issued a Memorandum and Recommendation that Defendants' Motion for Summary Judgment be denied. (Doc. # 158.) On January 30, 2013, Defendants Morris and Holt filed an Objection to the Magistrate Judge's Memorandum and Recommendation. (Doc. # 161.)

On February 20, 2013, Defendants filed a Motion to Declare the Affidavit of Jason Doss in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment was Submitted in Bad Faith. (Doc. # 163.) On February 22, 2013, Plaintiffs filed a Response in opposition to the motion. (Doc. # 164.)

<u>STANDARD OF REVIEW</u>

I.    <u>Review of a Magistrate Judge's Report and Recommendation</u>

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. <u>See</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. <u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." <u>Battle v. U.S. Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987) (internal quotations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Report and Recommendation is clearly erroneous or contrary to law. <u>United States v. Wilson</u>, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.   <u>Summary Judgment</u>

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Cannata v. Catholic Diocese of Austin</u>, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986). The moving party bears the initial burden of demonstrating the absence of any

genuine issue of material fact. Id. at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

## DISCUSSION

I.    Objections to the Memorandum and Recommendation

In their Motion for Summary Judgment, Defendants Morris and Holt seek judgment as a matter of law on the basis of qualified immunity. They now object to the Magistrate Judge's January 16, 2013 Memorandum and

6

Recommendation that their motion be denied, arguing that Plaintiffs have not met

the burden of overcoming the defense of qualified immunity.  More specifically,

Defendants contend that there is insufficient evidence that a constitutional right

was violated and insufficient evidence to support the existence of a conspiracy

between Defendants Morris and Holt to shut down Mulligan's Pub.[2]

    A.    <u>Legal Standard for Qualified Immunity</u>

        Government officials who perform "discretionary functions" may

invoke the defense of qualified immunity for suits brought against them in their

individual capacity.  <u>See</u> <u>Goodman v. Harris Cnty.</u>, 571 F.3d 388, 396 (5th Cir.

2009) ("Qualified immunity is only applicable as a protective shield once a

plaintiff has made out a claim against an official acting in his individual

capacity.").  "The doctrine of qualified immunity protects government officials

'from liability for civil damages insofar as their conduct does not violate clearly

---

    [2] Defendants also allege that the series of amended complaints somehow "allow[ed] Plaintiffs to shift and create the evidence to support their ultimate factual allegations." (Doc. # 161 at 1–4.)  However, any objections to Plaintiffs' amendments are untimely, and only the Third Amended Complaint is presently before the Court as it decides the instant Motion for Summary Judgment.  Moreover, the refining of a plaintiff's claims through a series of amended complaints is a normal part of the litigation process.  <u>See</u> Fed. R. Civ. P. 15 (allowing amendment once "as a matter of course" and mandating leave to amend "be freely given when justice so requires").  The Court declines to find any improper conduct on the part of Plaintiffs simply because they amended their complaint.

established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity serves the dual purpose of holding government officials accountable when their power is exercised unreasonably and protecting those officials from "harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

In deciding whether a government official is entitled to qualified immunity for an alleged constitutional violation, courts conduct a two-prong inquiry. McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir. 2002) (en banc).  Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. Id. at 322–23 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  Under the second prong, courts determine whether the violated constitutional right was "clearly established." Id. at 323. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Katz, 533 U.S. at 202. Once a defendant raises the defense of qualified immunity, it becomes the plaintiff's burden to show that it does not apply. Jones v. Lowndes Cnty., 678 F.3d 344, 351 (5th Cir. 2012).

B.    Objection that No Constitutional Right was Violated

Defendants Morris and Holt argue that, even assuming the existence of a conspiracy to shut down Mulligan's Pub, Plaintiffs have not suffered the deprivation of a constitutional right.  As such, they contend that Plaintiffs cannot overcome Defendants' defense of qualified immunity on summary judgment.

Section 1983 provides a private right of action for any person whose constitutional rights are deprived by state officials acting under the color of state law.  Conn v. Gabbert, 526 U.S. 286, 290 (1999).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)).  To bring a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).  In the instant case, Plaintiffs bring a substantive due process claim under § 1983, arguing that they have a liberty interest under the Fourteenth Amendment in operating their business, Mulligan's Pub, free from arbitrary deprivation by local police acting under color of state law.

9

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause contains a substantive component "that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Pertinent to this case, "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Stidham v. Tex. Comm'n on Private Sec., 418 F.3d 486, 491 (5th Cir. 2005) (quoting Truax v. Raich, 239 U.S. 33, 41 (1915)). The Fifth Circuit has held that "one has a constitutionally protected liberty interest in pursuing a chosen occupation." Stidham, 418 F.3d at 491; see also San Jacinto Savings & Loan v. Kacal, 928 F.2d 697, 704 (5th Cir. 1991) (finding that the owner of an arcade had a protectible liberty interest in operating her business); Shaw v. Hosp. Auth., 507 F.2d 625, 628 (5th Cir. 1975) (holding that a podiatrist's application for staff privileges at a public hospital for purposes of engaging in his occupation involved a liberty interest protected by the Fourteenth Amendment); Ferrell v. Dallas Indep. Sch. Dist., 392 F.2d 697, 703 (5th Cir. 1968) (noting that

10

the right of professional musicians to follow their chosen occupation free from
unreasonable governmental interference comes within the liberty concept of the
Fifth Amendment).  The Supreme Court has also recognized that the "liberty
component of the Fourteenth Amendment's Due Process Clause includes some
generalized due process right to choose one's field of private employment." Conn,
526 U.S. at 291–92.  In this case, therefore, Plaintiffs do have a liberty interest
pursuing their chosen occupation of operating a bar, Mulligan's Pub.

However, Defendants Morris and Holt argue that their alleged actions
do not rise to the level of a deprivation of a constitutional right, i.e. that Plaintiffs
have not actually been deprived of their liberty interest in operating their business.
They argue that any harm Plaintiffs suffered was not sufficiently egregious to rise
to the level of a constitutional deprivation.

Substantive due process remains a difficult and complex area of
constitutional jurisprudence, in part because "guideposts for responsible
decisionmaking in this unchartered area are scarce and open-ended." Collins, 503
U.S. at 125.  However, it plays an important role in the protection of the individual
from the abuse of governmental power.  See id. at 126 (finding that the Due
Process Clause was "intended to prevent government from abusing its power, or
employing it as an instrument of oppression").  In the context of an executive

11

abuse of power, a violation of substantive due process occurs if the state actor's conduct "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." Cnty of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (quoting Collins, 503 U.S. at 128).

Only the most egregious official conduct can be said to be "arbitrary in the constitutional sense." McClendon, 305 F.3d at 325–26 (citation omitted) (internal quotation marks omitted). "[T]he measure of what is conscience shocking is no calibrated yard stick," Lewis, 523 U.S. at 847, and "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another," id. at 850. At one end of the spectrum of culpable conduct, negligent behavior can never rise to the level of conscience shocking. See id. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); McClendon, 305 F.3d at 325 (holding that a plaintiff must "demonstrate that the state official acted with culpability beyond mere negligence"). At the other end of the spectrum, government officials are more likely to "shock the conscience" when they have the opportunity to reflect and yet act with deliberate indifference to the rights of citizens. See Lewis, 523 U.S. at 849 (finding actions "intended to injure in some way unjustifiable by any government interest" are those "most likely to rise to the conscience-shocking level"). Acts that fall

12

between the extremes of mere negligence and harmful intent require courts to make "closer calls," based on a context-specific inquiry.  Id.

In this case, Plaintiffs allege that Defendants Morris and Holt deliberately and intentionally abused their authority to harass customers in a plan to drive Plaintiffs out of business over a period of months.  In arguing there has been a deprivation of a constitutional right, Plaintiffs rely upon a Fifth Circuit opinion with similar facts to the instant case, San Jacinto Savings & Loan v. Kacal, 928 F.2d 697 (5th Cir. 1991).  In that case, the plaintiff Kacal owned an arcade business and presented evidence on summary judgment indicating that the police repeatedly harassed Kacal's patrons at her place of business, threatened to arrest patrons if they did not leave, prevented patrons from entering the business' parking lot, and stopped at least one vehicle en route to the business and informed the occupants they had to turn the car around.  Kacal, 928 F.2d at 703.  There was evidence that the comprehensive, concerted actions of the police caused Kacal to lose so much her business that she had to close her doors and default on her lease.  Id.  The Fifth Circuit emphasized that "the location and nature of the [business] premises, and access to it, were of primary importance" to the success of the business, which was a retail store, and that there was sufficient evidence that the police officers' "continual harassment of Kacal's young and easily intimidated

patrons caused the decline in patronage." Id. at 703–04.  The Fifth Circuit

ultimately held that Kacal's liberty interest in operating her business did rise to the

level of a constitutionally protectible interest, and the police were not entitled to

summary judgment on a defense of qualified immunity.  Id. at 704.

Defendants argue that the instant case is distinguishable from Kacal

for several reasons.  First, they point out that Kacal is a "stigma plus infringement"

case,[3] and Plaintiffs have brought no allegations of defamation in this case.

However, in Kacal, the Fifth Circuit noted that the record did not contain any

evidence that defamatory statements were actually made, id. at 702, ultimately

finding the dearth of evidence of defamation to be a "red herring" and that Kacal

"need not prove defamation to prove a violation of § 1983 in this case," id. at 704.

Thus, the fact that Kacal was initially analyzed as part of the "stigma plus

infringement" framework does not negate the holding of the case —namely, that

the conduct of the police rose to the level of depriving Kacal of a constitutionally-

protected liberty interest in the operation of her business.  Though not explicitly

---

[3] A plaintiff may bring a § 1983 due process claim under a "stigma plus infringement" theory by showing a stigmatizing statement plus a deprivation of a "life, liberty, or property interest."  See Kacal, 928 F.2d at 701–02.  This framework grew out of the Supreme Court's decision in Paul v. Davis, 424 U.S. 693, 710–11 (1976), where the Supreme Court held that the infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest.

stated in the opinion, the holding of <u>Kacal</u> appears to be grounded on a substantive due process theory.

Defendants also argue that, because Plaintiffs were not forced to close their business like the plaintiff in <u>Kacal</u>, Plaintiffs have not suffered sufficient harm to rise to the level of a constitutional deprivation of their liberty interest in the operation of their business.  Plaintiffs contend that their business need not fail to rise to the level of a constitutional deprivation and that "causing a disruption of the business is sufficient because the liberty and property interest includes the anticipated profits of the business."[4]  ("Response," doc. # 141 at 5.)

---

[4] To the extent Plaintiffs appear to assert a property interest in "lost profits," this is not alleged in the Third Amended Complaint.  (<u>See</u> doc. # 76 ¶ 58.)  Moreover, in discussing <u>Kacal</u> in a subsequent case, the Fifth Circuit explained, "it is unclear in <u>Kacal</u> whether lost profits were considered a protected property interest or only a measure of damages."  <u>Stidham</u>, 418 F.3d at 492 n.9.  The <u>Stidham</u> court continued to state that, "[n]evertheless, we are persuaded, if not required, by <u>Kacal</u> to conclude that anticipated profits may be considered a measure of damages from the deprivation of a liberty interest.  Such a conclusion is obviously buttressed by the fact that the elements of a constitutional liberty interest claim embody no property requirements as does the property prong of the Due Process Clause."  <u>Id.</u>  Plaintiffs have not adequately pleaded or established a protectible property interest in this case.  "The Constitution does not create property interests; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  <u>Bryan v. City of Madison</u>, 213 F.3d 267, 275 (5th Cir. 2000) (citations omitted) (internal quotation marks omitted).  Plaintiffs must establish a protectible property interest "by reference to state law."  <u>Id.</u> at 274–75.  Plaintiffs have made no such showing.  Thus, the only substantive due process claim before the Court is for a violation of Plaintiffs' liberty interest in pursuing their chosen occupation; there is

In <u>Kacal</u>, the Fifth Circuit distinguished a Seventh Circuit case finding no constitutional deprivation of an attorney's liberty interest in pursuing his chosen profession where the attorney was still able to practice law "even if the government had caused him to lose some clients," contrasting it to "evidence that the comprehensive, concerted actions of the police caused Kacal to lose so much of her business that she had to close her doors and default on her lease." <u>Kacal</u>, 928 F.2d at 703. Following the Fifth Circuit's decision in <u>Kacal</u>, the Supreme Court held in <u>Conn v. Gabbert</u> that a "brief interruption" of work in a desired occupation does not rise to the level of a constitutional deprivation, observing that the case law in this area has typically involved a "complete prohibition of the right to engage in a calling." <u>Conn</u>, 526 U.S. at 292; <u>see</u> <u>Flowers v. City of Minneapolis</u>, 478 F.3d 869, 874 (8th Cir. 2007) (finding that a temporary slow down in plaintiff's childcare business due to police activity "does not rise to the level of a deprivation of a fundamental right"); <u>Dittman v. California</u>, 191 F.3d 1020, 1029 (1999) (applying the "complete prohibition" standard of <u>Conn</u> to claims that a legislative act violated a plaintiff's liberty interest in pursing a chosen occupation).  In the context of an alleged procedural due process violation, the Fifth Circuit has held

---

no separate claim for a deprivation of a property interest in "lost profits" from Plaintiffs' business.

that one is deprived of a constitutionally protected liberty interest in pursuing a chosen occupation if the person is "effectively foreclosed" from practicing that chosen occupation. See Martin v. Memorial Hosp. at Gulfport, 130 F.3d 1143, 1148 (5th Cir. 1997). The Ninth Circuit has crafted a similar rule for substantive due process, citing Conn and holding that "there is substantive due process protection against government employer actions that foreclose access to a particular profession . . ."[5] See Engquist v. Or. Dep't. of Agric.,478 F.3d 985, 997–98 (9th Cir. 2007). While many courts have applied the Conn standard in the public employment context, at least one district court has applied it in the context of unreasonable or selective law enforcement activity affecting a business. See Benchley v. City of Enumclaw, No. C08-1322-JCC, 2009 WL 3268746, at *4 (W.D. Wash. Oct. 8, 2009). Thus, contrary to the ruling of the Magistrate Judge,[6] the Court finds that Plaintiffs must demonstrate more than mere loss of profits in order to sustain their substantive due process claim for violations of their

---

[5] In the public employment context, several courts have held that an employee's occupational liberty is not protected by substantive due process, but only by procedural due process. See Singleton v. Cecil, 176 F.3d 419, 427–28 (8th Cir. 1999) (gathering cases). Although the Ninth Circuit recognizes substantive due process claims in this context, it limits such claims to "extreme cases." Engquist, 478 F.3d at 997–98.

[6] See doc. # 158 at 11–13.

occupational liberty; they must demonstrate harm akin to a complete prohibition on the right to conduct their business.

Even taking the evidence in the light most favorable to Plaintiffs, Defendants' conduct did not "effectively foreclose" Plaintiffs from operating their business. According to the affidavit of Louis Doss, when Mulligan's Pub made less than $20,000.00 in a month, it was no longer profitable. (Response, Ex. 10.) Sales began in January 2008 at $19,399.00, peaked at $28,000.00 in June 2008, and steadily decreased to $21,343.00 in January 2009. It was around January 2009 that the alleged harassment by Defendants Morris and Holt began. (Id.) Sales dipped below $20,000.00 from February 2009 until June 2009, reached $20,979.50 in July 2009, and again dipped below $20,000.00 from August 2009 through November 2009. (Id.) Sales increased in December 2009 to $22,105.50 and remained above $20,000.00 through May 2010. (Id.) Plaintiffs maintain that sales increased—despite the fact that Mulligan's Pub attracted fewer customers due to the alleged harassment of Defendants Morris and Holt—because Mulligan's Pub increased prices and Plaintiffs infused money from their savings into the business. (Id.) While Plaintiffs lost profitability for part of 2009, this was not permanent; the business appears to have recovered despite allegations that police harassment continued into 2010. Based on the foregoing facts, the Court finds that the alleged

behavior of Defendants Holt and Morris did not "effectively foreclose" Plaintiffs' ability to operate their business. Thus, the Court holds that Plaintiffs have not met the heavy burden of establishing a constitutional deprivation of occupational liberty in this case.

Here, because no constitutional right was violated, Plaintiffs have failed to overcome the threshold burden of qualified immunity. The first prong of the qualified immunity test is "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." Freeman v. Gore, 483 F.3d 404, 410–11 (5th Cir. 2007). If the answer is "no," the analysis ends. Id. Plaintiffs have failed to establish the violation of a constitutional right, and the Court's analysis ends as to qualified immunity. As such, Defendants are entitled to judgment as a matter of law with respect to Plaintiffs' substantive due process claim for deprivation of their liberty interest the operation of their business. Additionally, because Plaintiffs' substantive due process claim fails, the Court need not address Defendants' objections to the sufficiency of the evidence of a conspiracy between Defendants Holt and Morris.

II.     <u>Motion to Declare Affidavit of Jason Doss was Submitted in Bad Fath</u>

On February 20, 2013, Defendants filed a Motion to Declare the Affidavit of Jason Doss in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment was Submitted in Bad Faith.  (Doc. # 163.)  In the motion, Defendants seek to strike the affidavit of Jason Doss and an award of attorney's fees.

Federal Rule of Civil Procedure 56(h) provides the Court <u>may</u> impose appropriate sanctions "[i]f satisfied that an affidavit or declaration under [Rule 56(h)] is submitted in bad faith or solely for delay."  Fed. R. Civ. P. 56(h).  Significantly, the advisory note applicable to the 2010 amendment to subdivision (h) provides: "Sanctions are made <u>discretionary</u>, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions."  <u>Id.</u> (emphasis added).

Defendants raise several evidentiary objections to the affidavit of Jason Doss, claiming that his testimony is not based on personal knowledge and that he has not been duly or timely qualified as an expert.  (Doc. # 163 at 1–3.)  However, the crux of the motion rests on alleged contradictions between Jason Doss' deposition testimony and his affidavit on summary judgment.  (<u>Id.</u> at 4–7.)  Contrary to Defendants' assertions, the Court finds that Jason Doss's deposition

testimony does not exist in irreconcilable conflict with his affidavit. Defendants

contend that Jason Doss states in his deposition testimony that he never personally

witnessed Defendant Morris harass the customers of Mulligan's Pub. (See id.) In

the summary judgment affidavit, Jason Doss describes the harassing training

techniques he was taught by Defendant Morris while patrolling at other minority

bars, but does not state that he personally witnessed Morris engage in these

behaviors at Mulligan's Pub; instead, he deduces that others' observations of

Morris' actions are consistent with the training that he received from Morris.

Whether or not this portion of Jason Doss's affidavit is properly admissible, there

is no overt contradiction that leads this Court to believe Jason Doss filed his

affidavit in bad faith. Moreover, the testimony of Jason Doss is of little relevance

given that the Court has found no constitutional violation has taken place. To the

extent Defendants seek to strike various portions of Jason Doss's testimony, the

Court finds that the motion is rendered moot. For all these reasons, the Court

**DENIES** the motion.

## CONCLUSION

For the reasons stated above, the Court **VACATES** the Magistrate

Judge's Memorandum and Recommendation (doc. # 158) and **GRANTS**

Defendants' Motion for Summary Judgment (doc. # 138). The Court **DENIES**

Defendants' Motion to Declare the Affidavit of Jason Doss in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment was Submitted in Bad Faith.  (Doc. # 163.)

IT IS SO ORDERED.

DATED: San Antonio, Texas, May 15, 2013.

David Alan Ezra
Senior United States District Judge