UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LOUIS V. DOSS and CAROLYN DOSS, individually and d/b/a MULLIGAN'S PUB, | § § § § | No. SA:11–CV–116–DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| TABC AGENT SCOTT HELPENSTELL, | § § § § | |
| Defendant. | § | |

ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Before the Court is a Motion for Reconsideration of the Court's Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment on the Basis of Qualified Immunity filed by Defendant Texas Alcoholic Beverage Commission ("TABC") Agent Scott Helpenstell ("Defendant.") (Dkt. # 222.) Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing. After reviewing the Motion and the opposing and supporting memoranda, the Court **DENIES** Defendant's Motion for Reconsideration.

BACKGROUND

I.   Factual Background

On January 30, 2011, Plaintiff Louis Doss ("Plaintiff") noticed a TABC vehicle parked at the Southway Pub, located in Kerrville, Texas. (Dkt. # 76 ¶¶ 40–41.) Plaintiff drove into the parking lot of an adjoining business, with the intent "to document this vehicle by photographing it." (Id. ¶ 42.) Plaintiff exited his vehicle and walked toward a fence separating Southway Pub from the adjoining business. (Id.) Plaintiff then used his cell phone camera to take a photograph of the TABC car and the license plate. (Id.) When Defendant exited the TABC car, Plaintiff took a photo of Defendant. (Id.) Plaintiff informed Defendant of this fact, and Defendant began walking toward Plaintiff. (Id.) Plaintiff then got back in his car. (Id.)

Beyond these facts, the parties' versions of events diverge. In his deposition, Defendant testified he heard someone yell, "Hey, I've got you now" in a loud, "threatenin' type manner." (Dkt. # 178, Ex. 3 at 4:155–56.) Defendant states that he turned to see who it was, and saw Plaintiff standing by the fence with something in his hand:

> It didn't appear to be a gun but, you know, I couldn't really tell what he was holdin' in his hand. I said, "Who are you? What are you doin'?" He's like, "I don't have to tell you anything but I've got you now." So at that point I thought, okay, I need to investigate this a little bit further. Especially with a rash of violence against police officers that's been going on—just the suspicious activity.

2

(Id. at 5:182–88.) As to the object in Plaintiff's hand, Defendant further stated, "I couldn't really tell what it was . . . . It didn't look like a gun—it didn't have the shape of a gun. I thought it might be a cell phone or somethin' like that—but I couldn't say clearly what it was. So the fact that he was pointin' something at me that I couldn't identify and makin' those statements I felt it be prudent on my part to investigate further." (Id. at 6:248–52.) However, later in his testimony, Defendant stated, "I believe it was potentially a weapon or something." (Id. at 7:289.)

Defendant testified that Plaintiff's behavior made him feel "[r]eal uneasy and alarmed." (Id. at 6:258.) He asked Plaintiff, "[w]hat are you doin'. Who are you?" Plaintiff responded, "I don't have to tell you anything but I've got you now," and began to walk away. (Id. at 7:312–14.) Defendant states that he followed Plaintiff around the fence, and Plaintiff identified himself as Lou Doss. (Id. at 10:425–29.) Defendant reports that he was familiar with Plaintiff from a previous dealing and knew him to be "a very difficult person . . . . Very aggressive type person—very confrontational." (Id. at 11:491–92.)

By this point, Plaintiff had gotten back inside his vehicle. (Id. at 10:425–26.) Defendant states that he asked Plaintiff for his driver's license, but Plaintiff refused to comply. (Id. at 11:482–84.) Defendant then told Plaintiff to wait in his car while Defendant called for assistance. (Id. at 14:623–24.) While

3

Defendant was searching for the Kerr County Police Department phone number, Plaintiff lowered his window and offered Defendant his driver's license and concealed handgun license.  (Id. at 15:658–61.)  Defendant states that when he asked Plaintiff if he had a firearm on him at that time, Plaintiff responded, "I sure do," and pulled out a 2-shot Derringer and "held it in the air and just kind of wagged it."  (Id. at 15:662–65.)  Defendant testified that he was scared, feared he would be shot, and thought he was "about to be in a gunfight."  (Id. at 16:678–686.)

When Defendant saw Plaintiff's pistol, he drew his own firearm.  (Id. at 17:740–42.)  He states that he instructed Plaintiff to put down his weapon, and Plaintiff complied.  (Id. at 17:755–61.)  Defendant then ordered Plaintiff to put his hands on the steering wheel where Defendant could see them.  (Id. at 17:761–62.)  Plaintiff did so, but began to yell, "Shoot me.  Kill me.  You're gonna have to kill me."  (Id. at 18:764–65.)  Defendant ordered Plaintiff to exit the vehicle, and states that Plaintiff refused.  (Id. at 18:766–67.)  Defendant testified that he then re-holstered his weapon and reached in the car window, unlocked the door, opened it, and again ordered Plaintiff to get out of the car.  (Id. at 20:893–96.)  Defendant grabbed Plaintiff by the arm, and Defendant stated that he saw Plaintiff's right hand reach down to the area where Plaintiff had put down his firearm.  (Id. at 21:919; 22:952–53.)  Defendant stated his belief that Plaintiff was reaching for his

4

gun and would try to shoot. (Id. at 22:961–69.) Defendant then grabbed Plaintiff by the collar and around the shoulders and pulled him from the vehicle. (Id. at 22:973–74.)

Defendant testified that at that point, Plaintiff's resistance stopped, and Plaintiff "let[] his legs go out from under 'em and lay spread eagle" on the ground. (Id. at 23:1022–25.) Defendant handcuffed Plaintiff and waited for backup officers to arrive. (Id. at 25:1095–1101.)

Plaintiff's version of events differs in several respects. In his affidavit, Plaintiff asserts that Defendant immediately recognized him in the Southway Pub parking lot, and became "angry and red faced" upon learning that Plaintiff had taken his photo. (Dkt. # 209, Ex. B ¶¶ 37(f); 37(j).) Plaintiff further claims that after Defendant followed him to his car, Defendant "began banging on the door to the vehicle and window violently trying to jerk the handle off the door." (Id. ¶ 37(n).) Plaintiff states that after giving Defendant his driver's license and concealed handgun license, he put both hands on his steering wheel; Defendant then commenced a "violent brutal attack that was completely unprovoked and without any resistance from me whatsoever, this attack included punches to my face and strikes to my head with a pistol, impacts so hard that they knocked me unconscious." (Id. ¶ 37(p).)

Plaintiff also states that Defendant "showed no interest in the gun or separating me from it," thereby acknowledging that he showed Defendant the weapon. (Id. ¶ 37(q).) Plaintiff nonetheless claims that he "at no time whatsoever resisted anything," and that Defendant "is lying when he claims that I made movements for a gun." (Id. ¶¶ 37(s); 37(t).) Finally, Plaintiff asserts that in the course of removing him from the car, Defendant "violently threw [him] to the concrete causing serious bodily injury." (Id. ¶ 37(x).)

II.     Procedural Background

On March 13, 2014, Defendant filed a Motion for Summary Judgment on the Basis of Qualified Immunity. (Dkt. # 178.) On May 12, 2014, Plaintiff filed a response, (Dkt. # 209), and on May 19, 2014, Defendant filed a reply. (Dkt. # 210.) Additionally, on May 28, 2014, Defendant filed a Notice of Supplemental Authority. (Dkt. # 211.) On May 30, 2014, Plaintiff filed a response to that document. (Dkt. # 213.)

On September 26, 2014, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment. (Dkt. # 219.) The Court granted summary judgment on Plaintiff's unlawful arrest claim because it found that Defendant was entitled to qualified immunity, but declined to grant summary judgment on Plaintiff's excessive force claim.

On October 6, 2014, Defendant filed the instant Motion for Reconsideration asking the Court to reconsider its denial of summary judgment on the excessive force claim, alleging that he is entitled to qualified immunity on that claim as well. (Dkt. # 222.) On October 9, 2014, Plaintiff filed a response. (Dkt. # 224.) On October 13, 2014, Defendant filed a reply. (Dkt. # 225.)

## LEGAL STANDARD

I. Motion for Reconsideration

"While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order." Shepherd v. Int'l Paper Co., 372 F.3d 326, 328 n.1 (5th Cir. 2004). Whether a motion is considered under Rule 59(e) or Rule 60(b) depends on when it was filed. See id. "If the motion is filed within 28 days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion. Obersteller v. United States, No. A–13–CV–198–LY, 2013 WL 7138802, at *1 (W.D. Tex. July 19, 2013); see also Fed. R. Civ. P. 59(e). Here, Defendant filed his Motion within 28 days of the Court's Order. (See Dkts. ## 219, 221.) Therefore, the Court considers this Motion under Rule 59.

A motion made under Rule 59(e) "calls into question the correctness of a judgment." Templet v. HydroChem Inc., 367 F.3d 473, 478 (5th Cir. 2004)

(quoting In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002)).  The Fifth Circuit has held that such a motion "[is] not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  In re Rodriguez, 695 F.3d 360, 371 (5th Cir. 2012) (quoting Templet, 367 F.3d at 478–79).  "A Rule 59(e) motion must clearly establish either a manifest error of law or fact and must present newly discovered evidence and cannot raise issues that could, and should, have been made before the judgment issued."  United Nat'l Ins. Co. v. Mundell Terminal Servs. Inc., 740 F.3d 1022, 1031 (5th Cir. 2014) (citing Advocare Int'l LP v. Horizon Labs., Inc., 524 F.3d 678, 691 (5th Cir. 2008)).

Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment."  S. Constructors Grp., Inc. v. Dynalectric Co., 2 F.3d 606, 611 (5th Cir. 1993).  In other words, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."  Templet, 367 F.3d at 479.

II.     Motion for Summary Judgment

Summary judgment is proper where the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of

material fact.  Davis v. Fort Bend Cnty., 765 F.3d 480, 484 (5th Cir. 2014) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).

      The court evaluates the proffered evidence in the light most favorable to the nonmoving party.  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).  The court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists."  Leghart v. Hauk, 25 F. Supp. 2d 748, 751 (W.D. Tex. 1998).  However, "[u]nsubstantied assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

## DISCUSSION

      Defendant asks this Court to reconsider its previous Order on two grounds.  First, Defendant argues that he is entitled to qualified immunity because his use of force was not excessive under clearly established law, even under Plaintiff's version of the facts.  (Dkt. # 222 at 1.)  Second, Defendant argues that Staten v. Adams, 939 F. Supp. 2d 715 (S.D. Tex. 2013) should not factor into the

Court's analysis because it was decided two years after the incident in this case, and because it is factually distinct from the case at bar. (Id. at 5.)

I.      Qualified Immunity, Clearly Established Law, and Excessive Force

Defendant argues that he is entitled to qualified immunity because even taking Plaintiff's version of the facts as true, his conduct did not constitute excessive force under clearly established law. (Id. at 1–2.)

Courts apply a two-prong test to determine whether a defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009). First, taking the facts in the light most favorable to the allegedly injured party, courts must determine whether the officer's conduct violated a constitutional right. Id. Second, if a violation occurred, courts ask whether the right was clearly established. Id. Courts may exercise discretion in deciding which of the two steps should be analyzed first. Pearson, 555 U.S. at 236. In this case, as in its original Order, the Court elects to address the second prong first. The second Saucier prong involves two separate inquiries: first, whether the allegedly violated constitutional rights were clearly established at the time of the incident; and second, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law. Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005); see also Saucier, 533 U.S. at 202.

10

Thus, the Court first asks whether Plaintiff had a clearly established right to be free from excessive force. It is undisputed that Plaintiff has that right under the Fourth Amendment. See, e.g., Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009) (explaining that the Fourth Amendment creates a right to be free from excessive force during a seizure). Next, the Court must determine whether, taking the facts in the light most favorable to Plaintiff, Defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. Whether the use of force was reasonable depends on a number of factors, often referred to as the Graham factors, including the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. Poole v. City of Shreveport, 691 F.3d 624, 627–28 (5th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).

In its previous Order, the Court focused its analysis on Thomas v. Murray, 107 F. Supp. 2d 748 (N.D. Tex. 2000) and asked whether that case should have put Defendant on notice that his conduct constituted excessive force. (Dkt. # 229 at 15–16.) The Court now revisits that analysis. In Thomas, the defendant police officer, Murray, asked the plaintiff, Thomas, to surrender his gun during an investigatory stop. 107 F. Supp. 2d at 752–53. When Thomas refused, Murray grabbed Thomas, pushing him up against a wall, and stuck the barrel of his gun in Thomas's throat. Id. at 753. For the purposes of summary judgment, the court

accepted as true Thomas's allegation that he never drew his own weapon or pointed it at anyone. Id. As a result of this altercation, Thomas suffered a head injury and lost consciousness for a period of time. Id. The court held that Murray was entitled to qualified immunity, finding that his use of force was not clearly excessive or objectively unreasonable under the circumstances. Id. at 758. In reaching this conclusion, the court relied on several undisputed facts: Thomas refused to surrender his weapon, Thomas was talking loudly and appeared agitated, and once Murray took possession of Thomas's gun no further force was used. Id.

      As the Court noted previously, Thomas does bear some similarities to the case at bar. (Dkt. # 229 at 15–16.) In both cases, the defendant officers were aware that the plaintiffs were armed and feared for their safety. Also in both cases, the plaintiffs claimed they in no way threatened the officers with their firearms. However, there are also critical differences.

      In Thomas, Murray initially questioned Thomas because a third party had accused Thomas of pulling a gun on him. 107 F. Supp. 2d at 752. In this case, Defendant approached Plaintiff's car because Plaintiff had been taking pictures and was holding something in his hand; Defendant gave conflicting testimony about whether he thought it could be a weapon. (See Dkt. # 178, Ex. 3 at 5:182–88; 7:289.) While the plaintiff in Thomas was suspected of having committed a violent and threatening act shortly before the confrontation with the officer,

Plaintiff in this case made no threat to anyone, at least under his version of events. Put otherwise, the first Graham factor weighed more heavily in favor of the use of force in Thomas than it did in this case.

   Furthermore, the plaintiff in Thomas actively refused to surrender his weapon when directed to do so by the officer.  107 F. Supp. 2d at 752–53.  In this case, even under Defendant's version of events, Plaintiff complied with Defendant's instructions to put down his firearm and place his hands on the steering wheel.  (Dkt. # 178, Ex. 3 at 17:755–65.)  The plaintiff in Thomas refused to comply with the officer's attempts to deescalate the situation, but Plaintiff in this case, especially under his version of the facts, cooperated with the instructions Defendant gave to try to diffuse the situation and remove the potential for gun violence.

   Finally, the defendant officer in Thomas did not use further force or threats of force after taking possession of Thomas's gun.  107 F. Supp. 2d at 758. In this case, according to Plaintiff's version of the facts, Defendant began to beat him after he complied with Defendant's instructions.  (Dkt. # 209, Ex. B ¶ 37(p).) While it is true that Plaintiff remained in possession of the gun and could have reached for it had he wanted to, Defendant did not ask him to surrender it but instead, Plaintiff claims, chose to use physical force.  Because of these critical differences between Thomas and the case at bar, the Court finds Thomas did not

13

clearly establish that Defendant's use of force was reasonable under the circumstances.

Defendant also argues that Brosseau v. Haugen, 543 U.S. 194 (2004) clearly establishes that Defendant's use of force was reasonable under the facts of this case. (Dkt. # 222 at 13; Dkt. #225 at 9–10.)  In Haugen, a man had gone to the police station and accused the plaintiff, Haugen, of stealing tools from his shop. 543 U.S. at 195.  Officer Brosseau also learned that there was a felony warrant out for Haugen's arrest on drug and other offenses.  Id.  Brosseau responded to a call reporting that Haugen was fighting with another man, and when she arrived, Haugen ran from the scene.  Id. at 195–96.  Haugen jumped into a car, where Brosseau believed he meant to retrieve a weapon.  Id. at 196.  Haugen ignored Brosseau's orders to get out of the car, and continued to look for his keys to start the ignition.  Id.  Brosseau shattered the window with her handgun and struck Haugen with the barrel and butt of the gun.  Id.  The Supreme Court held that Brosseau was entitled to qualified immunity, calling her actions "within that hazy border between excessive and acceptable force."  Id. at 201.

The Court finds that Haugen differs from the case at bar in important ways.  Both the first and third Graham factors weighed far more heavily in favor of force in Haugen than in this case.  As to the first factor, Haugen was accused of theft and being involved in a fight the day of the incident, and felony warrants

were out for his arrest. Haugen, 543 U.S. at 195–96. In contrast, Plaintiff took some photographs of Defendant and held something that Defendant thought perhaps could have been a weapon, although he also stated it did not look like one. (Dkt. # 76 ¶ 42; Dkt. # 178, Ex. 3 at 6:248–50.) As to the third factor, Haugen actively fled the scene and was attempting to start the car to drive away when Brosseau hit him with her handgun. Haugen, 543 U.S. at 195–96. In this case, according to both parties, Plaintiff made no move to leave the scene. For these reasons, the Court finds that Haugen did not clearly establish that Defendant's use of force was reasonable under the circumstances of this case.

In sum, the Court finds a reasonable jury could conclude that Defendant's use of force was excessive under Plaintiff's version of the facts: he took a photo of Defendant, retreated to his car, provided his driver's license and concealed handgun license upon request, put his hands on the steering wheel as instructed, and was subsequently subject to "a violent brutal attack that was completely unprovoked and without any resistance from [Plaintiff.]" (Dkt. # 209, Ex. B ¶¶ 37(c); 37(p).) The Supreme Court recently emphasized the importance of viewing the evidence at summary judgment in the light most favorable to the plaintiff in qualified immunity and excessive force cases:

> Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that

15

> courts should define the "clearly established" right at issue on the basis of the "specific context of the case." Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions.

Tolan v. Cotton, __ U.S. __, 134 S.Ct. 1861, 1866 (2014) (vacating grant of qualified immunity and remanding for further proceedings where the Fifth Circuit "failed to view the evidence at summary judgment in the light most favorable to [the plaintiff]"). For that reason, the Court declines to find that Defendant is entitled to qualified immunity on the excessive force claim.

II.     Staten v. Adams

Defendant argues that Staten v. Adams, 939 F. Supp. 2d 715 (S.D. Tex. 2013) should not be considered in this case because it was decided two years after the incident at issue. (Dkt. # 222 at 5.) As explained above, whether a right was clearly established at the time of a particular injury depends on the precedent available at the time of the injury. See Ashcroft v. al-Kidd, __ U.S. __, 131 S.Ct. 2074, 2083 (2011) (noting that "existing precedent must have placed the statutory or constitutional question beyond debate"). The incident in this case occurred on January 30, 2011. (Dkt. # 76 ¶ 40.) Therefore, only precedent available before that date may be used in determining whether Defendant's conduct violated a clearly established right. Because Staten v. Adams was decided two years after the events in this case it does not inform the Court's decision as to whether Defendant should have known that his conduct constituted excessive force. However, the

16

Court may look to that case in its evaluation of whether Defendant acted reasonably under the circumstances.

In Staten, the plaintiff, Staten, attested in his deposition that the defendant, Officer Adams, hit Staten with his gun through the open window of Staten's car while Staten had his hands up.  939 F. Supp. 2d at 724.  The court concluded that "were a jury to accept plaintiff's version of the facts that Officer Adams pistol-whipped plaintiff while plaintiff was sitting in the car with his hands up, it could conclude that such force was excessive and unreasonable to the need, even if plaintiff had failed to comply with orders to get out of the car and snatched his hands away as the officers attempted to cuff him."  Id. at 731.  The Court agrees with this analysis, and similarly finds that a jury viewing the facts in the light most favorable to Plaintiff could conclude that Defendant's use of force was excessive and unreasonable under the circumstances of this case.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendant's Amended Motion for Reconsideration.  (Dkt. # 222.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, November 24, 2014.

David Alan Ezra
Senior United States Distict Judge